party may recover for a breach of contract are such as ordinarily and naturally flow from the nonperformance. They must be proximate and certain, or capable of certain ascertainment, and not remote, speculative, or contingent. It is presumed that the parties contemplate the usual and natural consequences of a breach when the contract is made, and if the contract is made with reference to special circumstances, fixing or affecting the amount of damages, such special circumstances are regarded within the contemplation of the parties, and damages may be assessed accordingly." Booth v. Rolling Mill Co., 60 N. Y. 487, 492. This is the principle laid down in the celebrated English case of Hadley v. Baxendale, 9 Exch. 341, that the damages must be such as were in the contemplation of the parties. In the numerous cases which might be cited, applying this principle to various sorts of contracts, it has uniformly been held that where the damages claimed are of an exceptional character, growing out of special circumstances, notice of those special circumstances must have been given to the party sought to be charged at the time when the contract was made in such a way as to enable the court to say that the possibility of a particular loss growing out of those circumstances was in the contemplation of the parties to the agreement.

There is no other question of law in the case. While there was a square conflict in the testimony upon the issues of fact, a careful reading of the stenographer's minutes satisfies me that there is no ground for interfering with the verdict as against the weight of evidence.

The judgment should therefore be affirmed.

Judgment of the municipal court affirmed, with costs. All concur.

(65 App. Div. 270.)

SIMS v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. November 15, 1901.)

1. CARRIERS—STREET RAILROADS—INJURIES TO PASSENGERS—OPENING STATEMENT—DISMISSAL.

Where a street car passenger, intending to alight, leaves his seat and places himself on the step while the car is in motion and slowing up as if about to stop to let off passengers at a crossing, and while the conductor is in the front part of the car collecting fares and in such a position as not to see the passenger, and he is thrown off and injured by the sudden increase of the speed of the car before he has indicated to the conductor that he intends to alight, such acceleration of speed, unaccompanied by any other fact except that the conductor, in order to perform his duty of collecting fares, has placed himself in a position where he cannot see the passenger as he intends to alight, is not a foundation for a charge of actionable negligence, and, when nothing more is alleged or claimed in plaintiff's opening statement, the complaint is properly dismissed.

2. SAME—INTRODUCTION OF EVIDENCE—NECESSITY.

Where, assuming all the facts as stated by plaintiff's counsel in his opening statement to be proven, a finding in plaintiff's favor will not be sustained, the court may dismiss the action without waiting for the introduction of the evidence.

Hatch, J., dissenting.

Appeal from trial term, New York county.

Action by Harry Marion Sims against the Metropolitan Street Railway Company. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

John R. Abney, for appellant.

Charles F. Brown, for respondent.

INGRAHAM, J. The complaint was dismissed upon the opening, and the propriety of the dismissal is before us for review. The complaint alleges that on the 5th of July, 1898, the plaintiff was a passenger on one of the defendant's open cars on Broadway going uptown; that near the intersection of Forty-Second street and Broadway the plaintiff saw said car slowing up as if about to stop, and got up from his seat, and, while the car was slowly crossing Forty-Second street as if to stop, stepped down on the step of the car, holding on to the brass hand bar; that he saw the conductor on the step at the front of the car collecting fares with his back to the plaintiff; that, as the car did not stop entirely, the plaintiff whistled to the conductor, who turned his head towards the plaintiff, but did not stop the car, and the car suddenly jerked forward through the negligence and carelessness of the conductor and gripman, and the plaintiff was thrown off and injured. The negligence thus charged in the complaint appears to consist in the sudden jerk of the car by which the plaintiff was thrown to the ground. It is not alleged that the car had slowed down in response to any signal to stop. Thus the only employé of the defendant who was apprised of the plaintiff's intention to alight was the conductor, who had no control of the motive power of the car, and such signal was given just as the car started to go on. When the case came on for trial, the plaintiff's counsel, in opening the case to the jury, stated that he could prove, to sustain the allegations of the complaint, that these Broadway cars usually stop at the north corner of Forty-Second street for the purpose of letting passengers off to take the Forty-Second street cars; that as the car neared Forty-Second street it slowed up, so that the plaintiff supposed it was going to stop on the north side of the street; that the plaintiff got up as the car began to slow up crossing the street, and got down upon the step, holding on to the left-hand bar with his left hand, looking forward, with his bag of medical instruments in his right hand; that the conductor at that time was at the front part of the car, collecting fares from the passengers, with his back to the plaintiff; that, as the car did not stop entirely, the plaintiff whistled to the conductor, who turned his head towards him, and just at that time the car gave a sudden jerk forward, and threw the plaintiff off. At the conclusion of the opening, counsel for the defendant moved to dismiss the complaint upon the ground that the opening did not show any negligence on the part of the conductor in charge of the car, and that the negligence of the plaintiff contributed to the injury. The court asked counsel for the plaintiff

several questions, in answer to which he stated that the plaintiff was thrown off when the car had reached the cross walk; that simultaneously with the plaintiff's whistling to the conductor the car was jerked forward; and, when asked as to what particular negligence caused the accident, the counsel stated that it was the negligence of the conductor, "in that, instead of looking around to see that his passengers were all off, or getting off, before he let the car go on." The court then said: "You do not claim that the driver was negligent, because he had no notice that the man wanted to get off?" to which counsel replied: "No; it was not his business." The Court: "Then the driver was not negligent?" to which counsel replied: "No; I suppose not." The court then said: "Then the negligence of the conductor consisted in his taking up fares?" to which counsel answered: "Yes; and in not seeing who wanted to get off and on, —putting himself in a position not to see where those people that were behind him, as in this case, wanted to get off. He was violating his duty to the passenger." The court then said: "So, when you come down to it, the particular negligence which you charge is the failure of the conductor in seeing the man about to get off when he ought to have seen him?" Counsel: "Yes; the failure of seeing him ready to get off." The Court: "Although without any previous notice?" Counsel: "Yes." The Court: "I am permitting all this argument on this motion upon the assumption that the opening and the pleadings fairly raise the question as to whether or not there is an actionable cause of action. It rests right upon that question." Counsel: "Yes, it rests upon that question. That is the main question." The Court: "And that you have stated thoroughly and fully all that you expect to prove?" Counsel: "I have stated it fairly. Whether I stated that the car had got on the other side before the doctor saw that it was not coming to a stop or not, I do not know; but that is the fact. He was duly careful, and when he saw that it was not going to stop he then whistled, or something of that sort, and the conductor heard him." The Court: "I am assuming that the full case has been presented." Counsel: "Yes, sir." The court then stated: "Now, what duty that laid upon the agents of this company was neglected? Was it the fact that the conductor was not in the rear part of the car, so that he could see this man?" to which counsel replied: "Or looking around to see, one or the other. I submit to the court in all candor that I have not found the exact case anywhere, but I have found the exact principle, I think, and the exact principle lies in the rule of law that they are responsible for exceeding carefulness in carrying their passengers." After this statement, the court granted the motion to dismiss the complaint upon the ground that there was no negligence of the defendant. After the motion was granted, counsel stated that there was one mistake that he had made in regard to the gripman; that he then wanted to say that the negligence with which he wanted to charge the gripman was that it was not necessary for the gripman to jerk the car suddenly, and that the violence of the jerk was what threw the plaintiff off the car. The court then said that the counsel had stated as the particular negligence claimed that the plaintiff whistled,

that the conductor turned his head, and that just then, without an opportunity to signal and without signaling, the car started ahead; to which plaintiff's counsel replied, "That is right." The court then said, "Upon that statement, I say there is no actionable negligence, in my opinion."

The only question presented is, assuming that all the facts as stated by counsel in his opening were proved, would a finding that the defendant was negligent be justified? There was no objection to the court's passing upon this question upon the statement of counsel for the plaintiff, rather than permitting him to produce his evidence. Plaintiff's counsel insisted throughout that, upon the facts as stated by him, he would be entitled to have the question of the defendant's negligence submitted to the jury; but there was no claim that the plaintiff could prove any facts in addition to those stated. And if there was no suggestion of any fact, either in the complaint or in the opening, that would justify the jury in finding the defendant negligent, then it was not error to dismiss the complaint. The complaint, after setting up the fact that the plaintiff was a passenger upon the car, and that while he was standing on the step the car jerked forward so as to throw him off, charged generally that the car jerked forward through the negligence and carelessness of the conductor and gripman; thus, apparently, basing the claim of negligence upon the jerk of the car after the plaintiff had placed himself upon the step, supposing the car was about to stop. In his opening the plaintiff's counsel also claimed that the conductor was negligent in not placing himself in a position so that he could see the passengers as the car approached this crossing. What the plaintiff claimed as negligence, therefore, can be stated as—First, the negligence of the conductor in not placing himself in a position where he could see and protect the passengers as the car approached this cross walk, where it was in the habit of stopping to let off passengers; or, second, in the car's starting forward with a jerk when it was upon the cross walk, although at that time no passengers, so far as appears, had indicated an intention of alighting, and the agents of the defendant were not apprised of the fact that any passenger had placed himself in a position where an acceleration of the speed of the car would place him in danger. I cannot see that the action of the conductor could have in any way contributed to the accident. The plaintiff assumed that the car was about to stop, and that notice to the conductor to stop the car was not necessary to enable him to alight in safety; and he assumed that because the car usually stopped at Broadway and Forty-Second street to let the passengers off, and the car apparently slowed up in crossing the street. But it is not alleged that these cars are in the habit of stopping upon this crossing, except where passengers have indicated their intention of alighting. I think that, before an agent of the defendant can be said to be negligent in not stopping a car at a crossing, the passenger must in some way indicate to the agent that he wishes to stop. It was the duty of the conductor to collect the fares. There is no rule which requires the conductor to be in any particular part of the car, and there was no evidence

or statement that he was not at this time attending to his duty. The only charge that the plaintiff makes against him is that he was collecting fares, and had his head turned away from the plaintiff when the plaintiff stepped down on the step; but I cannot see that this action of the conductor would justify an inference of negligence, he being at the time, so far as appears, engaged in the performance of his duty collecting fares, and he could not at the same time collect fares and watch the plaintiff and the other passengers of the car. It was the plaintiff's duty, if he wished to alight, to indicate that wish either to the conductor or to the gripman. In the absence of such indication, it cannot be said that the conductor was negligent because for a moment he looked away from where the plaintiff was sitting in order to perform his duty of collecting fares. Nor do I think that the statement would justify an inference that the gripman was negligent in starting the car. The speed of the car was lessened as it approached the street, so that it could be stopped if any passenger wished to alight. No passenger giving an indication, either to the conductor or the gripman, that he wished the car to stop until it was on the north cross walk, the gripman was justified in starting the car ahead to continue its trip. So far as appears, this was all that he did. The starting of the car is characterized, both in the complaint and the opening, as a "jerk," the complaint alleging that the car suddenly jerked forward, and threw the plaintiff off; but it is not alleged that this was more than was necessary to start the car, or anything more than the ordinary starting of the car after it had stopped or nearly stopped. The plaintiff claims that it was not contributory negligence to stand upon the step as the car approached this crossing. That is probably true; but if a person thus voluntarily places himself upon the step when the car is in motion, and is thrown off by the increase of the speed of the car, which happens before he has indicated to any of the agents of the company that he intends to alight, such a starting of the car, unaccompanied by any other fact, cannot be the foundation of a charge against the company of negligence. Upon the whole case, I think that neither the facts as alleged in the complaint nor the statement of the existing conditions at the time of the accident upon the plaintiff's opening would have justified the jury in finding the defendant guilty of negligence, and from this it follows that the court correctly dismissed the complaint.

The judgment appealed from should be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN and McLAUGHLIN, JJ., concur. HATCH, J., dissents.