## MADSEN v. UTAH LIGHT & RAILWAY COMPANY.

No. 2038. Decided November 17, 1909 (105 Pac. 799).

1. WITNESSES — "PRIVILEGED COMMUNICATIONS" — PHYSICIAN AND PATIENT. The intent in enacting Comp. Laws 1907, sec. 3414, subd. 4, providing that a physician cannot without the consent of his patient be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe for the patient, was not that all information, whether by communication or otherwise, obtained by physicians from their patients, should be privileged, but such information only as may reasonably be necessary to enable the physicians to apply their full professional skill for their patients' benefit, which information is privileged, although it may be a narrative of the facts leading to an accidental injury. (Page 536.)

2. WITNESSES—PRIVILEGED COMMUNICATIONS—PHYSICIAN AND PATIENT. Where it appears that a physician has prescribed for or treated a person, or has obtained any information from such person for the purpose of doing so, the inference arises that such information was necessary, so that it would be a privileged communication, and not competent evidence, over the patient's objection, and, unless such inference is rebutted the ultimate fact that it was necessary may be assumed to be established; but such inference is negatived by the testimony of the physician disclosing to the court just what the facts were under which the information was obtained, when it may be that the inference is entirely overcome, though the testimony of the physician may not be conclusive, and the court may be justified in holding the information necessary, notwithstanding the statement of the physician to the contrary.[1]   (Page 538.)

---

[1] Munz v. Salt Lake City, 25 Utah 220, 70 Pac. 852.

3. WITNESSES—PRIVILEGED COMMUNICATIONS—STATEMENTS TO PHYSICIAN. Plaintiff, injured in alighting from a street car, gave a statement to a physician treating him to the effect: That he was going home on the car, standing on the lower step, expecting to get off on the north side of a certain street, but the car kept on going, and he got off and was thrown to the ground; that he did not tell the conductor to stop on the north side of the street, but thought that he always did stop on that side, and therefore jumped off; that when he jumped he fell on his left side and could not get home without assistance. *Held*, that the information was not necessary to assist the physician to intelligently treat plaintiff for his injury and was not a privileged communication. (Page 542.)

4. WITNESSES—PRIVILEGED COMMUNICATIONS. Where physicians made a physical examination of an injured ·person whom they put under the influence of an anaesthetic to obtain information to enable them to treat his injury, information obtained thereby was a privileged communication. (Page 543.)

5. APPEAL AND ERROR—REVIEW—ERRONEOUS EVIDENCE—INFERENCE—PREJUDICE. As a general rule, where the court admits incompetent evidence upon a material issue, all the party against whom such evidence is admitted need do is to produce the record disclosing the admission of such evidence, and his objection and exception, from which the legal inference obtains that the error is prejudicial, and hence is reversible error; but the opposite party may show from the record that the error is nevertheless not fatal. (Page 544.)

6. APPEAL AND ERROR—REVIEW—PREJUDICIAL ERROR. Under Comp. Laws 1907, sec. 3285, providing that no exception shall be regarded unless the decision excepted to is material and prejudicial to the substantial rights of the party excepting, error in the admission of evidence will not be ground for reversal of a judgment for defendant, where it relates to an issue which is made immaterial because another vital issue is found in defendant's favor, or unless upon the record, as presented to the appellate court, there is at least a possibility of injury; and hence a judgment for defendant, in an action for injuries to a street car passenger, will not be reversed for the erroneous admission of privileged communications from plaintiff to his physician, where the evidence sustained the finding that defendant was not negligent. (Page 546.)

7. CARRIERS—STREET RAILROADS—INJURY TO PASSENGER—EVIDENCE. In an action for injury to a street car passenger, evidence *held* to support a finding that defendant was not negligent. (Page 546.)

36 Utah—34 ·

APPEAL from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by N. P. Madsen against the Utah Light & Railway Company.

Judgment for defendant. Plaintiff appealed.

AFFIRMED.

STRAUP, C. J., dissenting.

*James D. Pardee* for appellant.

*P. L. Williams, George Smith,* and *John G. Willis* for respondent.

APPELLANT'S POINTS.

The third error complained of relates to the question asked of Dr. Van Cott by the defendant, to-wit: Q. "At the time you had the conversation resulting in putting this —making this statement (defendant's exhibit 1) was Mr. Madsen conscious, rational or not? A. Yes sir." The objection to this was made by plaintiff on the ground that the matter was incompetent, irrelevant and immaterial. This raises the question of the competency of Dr. Van Cott to testify to any condition, mental or physical, knowledge of which he gained by treating the plaintiff as a physician. Under section 3414, subdivision 4, Laws of Utah 1907.

If our statute prevents a physician from testifying, it certainly prevents a physician from testifying to the mental condition of his patient as much as to any physical condition of his patient. The lower court was entirely erroneous when he permitted Dr. Van Cott to answer the question. (Flint's Est., 100 Cal. 391; *In re Nelson's Estate,* 132 Cal. 182; *In re Redfield's Est.,* 116 Cal. 637; *Gurley v. Park,* 135 Ind. 440; *Bracnney v. Fogel,* 156 Ind. 535; *Towles v. McCurdy,* 163 Ind. 12; *In re Hunt's Will,* 122 Wis. 460.) The law is that where the relation of the physician and patient exist it will be presumed that the information in question would not have been imparted to the physician, except for

the purpose of aiding him to prescribe. The physician in such cases is the judge of the matter, and all communications made to him or questions asked by him are presumed to be given and saked for the purpose of enabling the physician to prescribe. (*Gratan v. Met. Life Ins. Co.,* 80 N. Y. 281, 36 Am. Rep. 617; *Fenney v. Long Island R. R. Co.,* 116 N. Y. 375, 5 L. R. A. 544; *State v. Kennedy,* 177 Mo. 98, 75 S. W. 979; *Eddington v. Mutual Life Ins. Co.,* 67 N. Y. 185; *Battis v. Chicago R. I. & P. R. Co.,* 124 Ia. 623.)

Besides the presumption held as to such matters, it has been specifically held that physicians are not allowed to testify to communications from a patient as showing what the cause of the injury was or as to the manner in which the accident occurred. (*Raymond v. Burlington C. R. & N. Ry. Co.,* 65 Ia. 152; *McRae v. Erickson,* 1st Cal. App. 326; 82 Pac. 209; *Norton v. City of Moberly,* 18 Mo. App. 457; *Streeter v. City of Breckenridge,* 23 Mo. App. 244; *Cling v. City of Kansas,* 27 Mo. App. 231; *N. Y. C. & S. L. R: Co. v. Mushrush,* 11 Ind. App. 192; *Penn. Co. v. Marion,* 123 Ind. 415; *U. P. R. R. Co. v. Thomas,* 152 Fed. Rep. 365.)

### RESPONDENT'S POINTS.

It affirmatively appears that Dr. Van Cott did not prescribe for or treat the plaintiff, and that he did not obtain any information from the plaintiff that was necessary for him to obtain in order to treat him, if he had done so or desired to, and under such a state of the evidence the information acquired from or the statements made by the patient are admissible. (*In re Halsey's Estate,* 9 N. Y. Supp. 441; *Dittrich v. Detroit,* 57 N. W. 25; *Green v. M. S. Ry.,* 63 N. E. 958.)

If any presumption attends that the information acquired by a physician was within the statute in the absence of any showing, the condition of the evidence respecting this assignment was such as to positively rebut any such presumption.

and to show affirmatively that the communication was not within the privilege of the statute. (*Sheron v. Sheron*, 22 Pac. [Cal.] 26 [Points 24 to 26]; *Taylor v. Taylor*, 68 Pac. [Cal.] 482; *Earl v. Grout*, 46 Vt. 13; *State v. Snowden*, 23 Utah 318; *Corney v. Tomahill*, 37 Am. Dec. 287; *Childs v. Merrill*, 66 Vt. 302; *Hughes v. Boon*, 102 N. C. 137.)

It is well settled that in an action to recover damages for personal injuries where the plaintiff calls the physician as a witness, it is of itself an express waiver of the seal of secrecy imposed by the statute as to such witness. (*Alberta v. N. Y. L. E. & W. R. R.*, 118 N. Y. 78; *McKinney v. Grant Street, etc., R. R.*, 104 N. Y. 352; *Holcomb v. Harris* [N. Y.], 59 N. E. 820; *Hoyt v. Hoyt* [N. Y.], 20 N. E. 402; *Thompson v. Ish*, 17 Am. St. 552 note at page 570; *Pringle v. Burrough*, 75 N. Y. Supp. 1055.)

The plaintiff, by his own conduct, in proceeding to examine Dr. Calderwood in detail as to the nature and extent of the injury, broke the seal of secrecy, and put directly in issue the nature and extent and cause of the injury. It thereupon became a matter of open inquiry and competent for the defendant to rebut that character of evidence with reference to which Dr. Calderwood was examined in chief. (*Treanor v. Manhattan R. Co.*, 16 N. Y. Supp. 536; *Lane v. Boicourt* [Ind.], 27 N. E. 1110; *Highfill v. Mo. Pac. R. R. Co.*, 93 Mo. App. 219; *McKinney v. Grant Street R. Co.* [N. Y.], 10 N. E. 544.)

FRICK, J.

Appellant brought this action to recover damages for personal injuries. In his complaint he, in substance, alleged: That at a certain time and place he was a passenger on one of respondent's street cars; that he informed the conductor that he desired to alight at a certain street crossing; that when the car approached the crossing in question it slackened speed and was running slowly; that appellant then left the inside of the car and went onto the rear platform, and from there stepped onto the car step with a view of alight-

ing therefrom; that the car did not stop at the crossing, but at about the time he reached the same it suddenly increased its speed, which caused the appellant to fall from the car step to the ground, by reason of which he was greatly injured. Respondent denied all acts of negligence and pleaded contributory negligence. A trial to a jury resulted in a verdict in favor of respondent. The court entered judgment upon the verdict, and the appellant presents the record on appeal.

The principal assignments of error, and on which appellant strenuously insists, relate to the admission of certain evidence over appellant's objections. The first error to be noticed arose as follows: After appellant had testified and given his version of the accident and detailed the cause and extent of his injuries, the defendant called Dr. Van Cott as a witness, who, in answer to respondent's counsel, testified, in substance: That he was a physician and surgeon; that he had been engaged in practice for over five years; that at the time of the accident he was engaged in practice in Salt Lake City; that he was not a member of the medical staff of respondent, nor was he employed by it as an assistant; that at times, in cases of accident, when he was called on, however, he had done some emergency work for respondent when respondent's regular surgeons could not be obtained; that on the evening of April 13, 1907 (the date of the accident complained of), the witness was requested by Dr. Landenberger, one of respondent's regular surgeons, to go to the home of appellant. Questions were then asked and answered as follows: "Q. When you did things of that kind, state whether or not it was part of your duty, when making a call in an emergency case for the Utah Light & Railway Company, to obtain a record or statement. A. Yes, sir; it was. Q. Obtain a record or statement of the accident and how it occurred, and turn it into the company? A. Yes, sir. Appellant's Counsel: I object to that as being incompetent, irrelevant, and immaterial, and move to strike out his answer. The Court: The motion to strike out is denied. Appellant's Counsel: Exception."

The doctor further testified that he had a conversation with appellant and obtained a statement from him on the evening of the accident; that he reduced the statement to writing, read it over to appellant; that appellant signed it; that that the statement was the one then exhibited to the witness, which will hereafter appear in full. Counsel for respondent then asked the witness: "I wish you would state whether or not, in that conversation with reference to how this accident occurred and the things that appear on that statement, you obtained any information from the plaintiff that was neccessary for you to obtain in order to treat him if you had desired to do so?" Counsel for appellant interposed the following objection: "Objected to as incompetent and irrelevant, calling for a conclusion." The objection was overruled and exception noted. The witness answered: "No, sir." "Q. At the time you had the conversation resulting in putting this—making this statement, was Mr. Madsen (appellant) conscious and rational, or not? A. Yes, sir. Counsel for Appellant: I object to that as incompetent, irrelevant, and immaterial, and move to strike the answer out. The Court: Overruled. You may have the benefit of the objection as though made before the answer. Appellant's Counsel: Exception. Q. Have you any other source and cause of obtaining the information you put here except what he told you? A. No, sir. Q. Where and what was he doing when you went to the house? A. He was sitting in a chair, if I remember correctly. Q. Dressed or undressed? A. He was dressed. Q. Did you make any examination, or attempt to, of his physical condition? A. Yes. I asked him where he was injured, and I took hold of his knee and started to move it, and there was considerable pain there, and he could not move the limb very well without considerable pain." Then the doctor stated that he could not examine the patient satisfactorily and made arrangements with Dr. Landenberger over the 'phone to make a further examination the following morning. The doctor then went on and stated that he and Dr. Landenberger made a further examination of appellant the following

morning, and detailed what they then discovered. We shall refer to the examination that was made the following morning hereafter. The doctor was cross-examined by counsel for appellant, and, in referring to the doctor's visit and its purpose, the following, among other, questions were asked and answered: "Q. Mr. Madsen (appellant) understood you were a physician, did he? A. Yes, sir. Q. And that you came there for the purpose of treating him? A. Yes, sir. Q. And to render any medical assistance that the case required? A. Well, I did not state that to him— Q. He understood that, did he? A. I do not know. Q. Did you tell him you would render any assistance that was necessary? A. No, I did not tell him. - Q. You went right to work, however, and commenced to inquire about the case? A. Yes, I told him I was sent by the Utah Light to see about his injury."

The foregoing is a substantial transcript from the original bill of exceptions giving the questions and answers thereto, the objections of counsel, and rulings of the court, with the exceptions thereto. For convenience we shall here insert the statement that the doctor testified he obtained from appellant on the evening of the accident, and which was, over appellant's objection, admitted in evidence. This statement was exhibited to appellant when he was a witness on the stand, and he admitted that the signature was his. The statement, in full, is as follows:

"Salt Lake City, April 13, '07. Mr. N. P. Madsen. Employee U. L. & Ry. Co. 63 years. Injured 6:30 p. m. on 6:15 car leaving Main. I was coming home on the Calder's Park car and I was standing on the lower step, expecting to get off on the north side of Ninth South, but the car kept on going and I got off. The car was going so fast it threw me to the ground. I did not tell the conductor to stop on the north side, but thought he always did stop on the north side, and that is the reason I jumped. When I jumped I fell on my left side and could not get home without assistance."

Appellant's counsel made the following objection to the admission of this statement: "I object to that on the ground it is incompetent, irrelevant, and immaterial, and under

the statute as being a privileged communication." The court overruled the objection, and counsel duly excepted.

From the foregoing it will be observed that, while counsel did not refer to the privilege in making his objections to Dr. Van Cott's testimony, he nevertheless made this objection when the statement obtained by the doctor from appellant was offered in evidence. The questions raised therefore are: (1) Whether, in view of the state of this record, the assignment of error referred to is properly before us; (2) if it is, whether the record discloses that, when the statement was obtained, the relation of physician and patient existed between Dr. Van Cott and appellant, and (3) if this be so, whether the statement, when fairly construed, comes within the statute as a privileged communication. As to the first two propositions, we entertain serious doubts; but in view that the trial court evidently understood the object and purpose of counsel's objections, and as counsel for both parties have treated and argued the assignment as being before us, we shall so treat it, and thus address ourselves to the third and last proposition, namely, is there anything contained in the statement of appellant which is protected by the statute? Subdivision 4 of section 3414, Comp. Laws 1907, reads as follows:

"A physician or surgeon cannot, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient."

While the courts are not in strict harmony in concretely applying the provisions of statutes similar to the foregoing, yet they practically all agree that, in order to bring the information referred to in the statute within its provisions, it must be made to appear: (1) That the information was obtained during the existence of the relation of physician and patient; and (2) that the information, however acquired, was necessary to enable the physician or surgeon to prescribe for or act professionally for the patient. The statute should receive a fair and reasonable construction and should be applied

and enforced so as to accomplish the purpose for which it manifestly was designed. It seems quite clear that in adopting the statute the legislature did not intend that all information, whether by communication or otherwise, which is obtained by physicians from their patients, should be privileged, but such information only as may reasonably be necessary to enable the physicians to apply their full professional skill for the benefit of their patients. The statute is not intended as an aid to conceal or smother the truth in a court of justice; but its object is to protect as privileged all that may be said by a patient to his physician while the relation of trust and confidence exists, and, further, to protect all the information a physician obtains through his senses of touch, sight, or otherwise, during such relation, provided the communication or information was reasonably necessary to enable the physician to accomplish the purpose for which the relation of physician and patient is called into existence. As we have said, the cases are not in strict harmony as to just what information or communications come within the statute. The main difficulty arises in those cases where there was no direct evidence of whether the information in question was or was not necessary to enable the physician to discharge his professional duties to the patient. As may well be conceived, the question whether the particular information in question in any case was or was not necessary cannot always be left to the physician's statement, or to what is called direct evidence; but, as is well said by the Supreme Court of Missouri, in *State v. Kennedy*, 177 Mo. 129, 75 S. W. 987, the physician "must, as a general rule, under the statute, determine for himself whether the information acquired by him from his patient is necessary for him to prescribe for such patient, and, in the absence of some showing to the contrary, as in the case at bar, the presumption must be indulged that the information in question was necessary for that purpose." *Munz v. Salt Lake City*, 25 Utah 220, 70 Pac. 852, is, in substance, to the same effect.

The foregoing statement commends itself to our judgment, with the exception of the unguarded expression that, when there is no showing to the contrary, the "presumption must be indulged," etc. A moments's reflection will show that the law does not raise a presumption either way, but leaves the question as one of fact. Where therefore it is made to appear that a physician prescribed for or treated a person, or that the physician obtained any information from such person for the purpose of doing so, the inference arises that such information was necessary, and, unless this inference is rebutted, the ultimate fact that it was necessary may be assumed to be established. When, however, this inference is negatived by the testimony of the physician disclosing to the court just what the facts were under which the information was obtained, then it may be that the inference is entirely overcome. Quite true, the testimony of the physician may not, in all cases and under all circumstances, be conclusive, and the court may still be justified in holding the information necessary, the statement of the physician to the contrary notwithstanding. If the rule were otherwise, the physician would have it in his power to either enforce the statute with respect to all information, or to ignore it with respect to all. This would be unreasonable.

The testimony of the physician from which the court may determine whether the information was or was not necessary to enable the physician to act is always important, and, we think, should receive fair and full consideration; but in determining its weight and effect it should be considered in the light of all the facts and the surrounding circumstances. In some cases and under some circumstances the statement or information obtained from the patient may be self-explanatory, and thus a mere inspection of it, if written, or merely having it stated, if oral, may be sufficient to enable the court to determine whether the information is privileged or not. In other cases the doctor's statement as to whether the information was necessary or not may be conclusive upon the subject. Where therefore evidence of this

character has been either admitted or excluded by the trial court, and its rulings are attacked and presented to the appellate court for review, the reviewing court must, from the record presented, of necessity, determine two things: (1) Did the trial court err in either admitting or excluding the evidence? And (2) if it did, is the error prejudicial? The first question now to be determined therefore is: Does the statement, or any part thereof, made by appellant to Dr. Van Cott, come within the statute as privileged? A mere cursory inspection of the statement discloses that it contains nothing except a brief narrative of what occurred at a certain time and place. We think it is also apparent that, at least upon its face, nothing is disclosed of a confidential nature, nor of any fact or facts, which, to the ordinary mind at least, would seem necessary for a physician to know in order to prescribe for or treat the person making the statement for the injury disclosed thereby. In fact, no injury is even referred to in the statement in question; but whether one existed is left entirely to inference. In addition to this, Dr. Van Cott testified that he obtained no information of the character which is protected by the statute. If this be true—and there is nothing in the record showing the contrary—the statement in question is not privileged. We are aware that there are cases which seem to go to the extent of holding that, when the relation of patient and physician is once conceded, about everything which has any relation whatever to the accident or injury in question comes within the statute. We shall not attempt to cite nor refer to a large number of cases, but shall refer the reader to a few only as fair types. The following are cases which seem to favor the doctrine last above stated: *Battis v. Railway Co.*, 124 Iowa 623, 100 N. W. 543; *Keist v. C. G. Ry. Co.*, 110 Iowa 32, 81 N. W. 181; *McRae v. Erickson,* 1 Cal. App. 326, 82 Pac. 209; *Pennsylvania Co. v. Marion,* 123 Ind. 415, 23 N. E. 973, 7 L. R. A. 687, 18 Am. St. Rep. 330.

It is only fair to state that, in all of the foregoing cases, it was either affirmatively made to appear that the physician

regarded the particular information in question necessary, or that such fact arose as an inference deduced from other facts. Upon the other hand, there is also a large number of cases from very able courts which take, what seems to us, a more rational view. As types of that class, we cite the following: *Green v. Metropolitan St. Ry. Co.,* 171 N. Y. 201, 63 N. E. 958, 89 Am. St. Rep. 807; *Griffiths v. Same,* 171 N. Y. 106, 63 N. E. 808; *Green v. Terminal Ry. Ass'n, etc.,* 211 Mo. 18, 109 S. W. 715. In the case of *Green v. Metropolitan St. Ry. Co., supra,* a statement in its effect just like the one now under consideration was the subject of review. After stating the manifest purpose of the statute, Mr. Justice Gray, at page 204 of 171 N. Y., at page 959 of 63 N. E. (89 Am. St. Rep. 807), says: "Surely it could not have been intended that any truthful version of a narrative of the events leading to an accidental injury should be excluded and that was all this question called for, as it had come from the sufferer's lips, and when fresh in his recollection. It is rather more consonant with the requirements of justice that no witness should be prevented from giving such evidence." From the doctor's testimony in the case referred to, it was left very doubtful whether he deemed the information received by him necessary to enable him to prescribe for the injured person. There is a dissenting opinion based, however, upon the fact that the information was deemed necessary by the doctor, and for that reason it is claimed that the case is clearly distinguishable from the case of *Griffiths v. Metropolitan St. Ry. Co., supra,* in which the doctor testified, as in this case, namely, that the information was not necessary.

The case of *Green v. Terminal Railway Ass'n, etc., supra,* is a very recent case, decided in 1908. In that case about all the important cases upon this question are examined and reviewed. In our judgment the true test is applied in that case. The court, in referring to the statute, emphasizes the fact that it is manifest from the statute itself that not all information that a physician obtains from his patient is privileged, but only such as is necessary to en-

able the physician to discharge his full professional duty to
his patient; that the patient may disclose many matters to
the doctor that in no way are of assistance to the doctor in
discharging his professional duties, and, where such is the
case, such matters are not privileged because not within the
provisions of the statute.   The Missouri Supreme Court,
however, in effect holds that, to some extent at least, the
question whether particular information under peculiar cir-
cumstances was necessary for the doctor to know or not is
a judicial question, and that the fact that it may not be
easy of application in all cases in no way affects the duty
of the court to determine when it shall be applied and when
not in accordance with the manifest intent and purpose of
the statute and in furtherance of justice.   If th refore, in
order to enable the doctor to prescribe for the injured pa-
tient, it becomes necessary for the doctor to know how an
accident occurred, and he obtains the information while the
relation contemplated by the statute exists, the information
is privileged, although it may be "a narrative of the events
leading to an accidental injury."   This, it seems to us,
should be the test.   If the information is reduced to writing,
it may upon its face show whether it was or was not neces-
sary, and the court may declare it either within or without
the statute.   Again, the trial court may be justified in ac-
cepting the doctor's statements, and from them determine
whether the information was or was not necessary, and again
declared    the    result    as    before.    Upon    the    other
hand,    the    court    may,    from    all    the    circumstances,
determine that the information was necessary, notwithstand-
ing the doctor's statements to the contrary, and thus exclude
the information as privileged.   Neither the trial court nor
this court therefore should arbitrarily either admit or ex-
clude all information which may relate to the accident or
injury; but, in determining whether specific information
should be excluded or admitted, the purpose of the statute
should be kept in mind, and if, in the judgment of the
court, the particular information in question comes within

the statute, it should be excluded, and, if otherwise, it should be admitted in evidence.

Let us analyze the statement made by appellant and see whether there is anything in it that, by reason of the privilege contemplated by the statute, the doctor was not authorized to disclose. There certainly is nothing **3** in the first sentence commencing with, "I was going home," etc., which could possibly be tortured into a meaning which would bring it within the privilege. What information is there in that sentence which would be of assistance to even the dullest intellect in prescribing for a person who "got off" a car while it "kept on going?" The sentence which follows, in which appellant says that when he got off "the car was going so fast that it threw me to the ground," likewise contains nothing except a narrative of what was a most natural occurrence. It may be said that, under some circumstances, it might be of some assistance to the physician to explain certain symptoms if he were told whether the injured person fell against some object, or whether he was precipitated and fell a considerable distance or with much or little force, and matters of that kind; but there certainly is nothing of this character disclosed by appellant in the foregoing statements. All that he says is that he fell to the ground. It certainly cannot be claimed that in the sentence succeeding the foregoing there is anything that can possibly be privileged. To so contend would be to make a farce of the statute. Coming now to the last sentence, namely, "When I jumped I fell on my left side, and could not get home without assistance." Does appellant here refer to any injury except by inference? Where was he injured, if at all? From this meager narrative of what appellant did and what happened to him at a particular time, can it reasonably be contended that a physician could have obtained information which would assist him to intelligently treat appellant for some injury or injuries he might have sustained? We cannot yield assent to such a contention. To hold that such information, obtained under such circumstances, is privileged, would, in our judgment, make the

privilege absolute, and not conditional, as is contemplated by the statute. This would result in declaring the statute to mean one thing when its plain language clearly means something else. This we have no authority to do. In our opinion therefore, and in view of the circumstances disclosed by the record before us, the statement in question is not privileged, and the court committed no error in admitting it in evidence.

The information that was obtained from appellant by Drs. Landenberger and Van Cott on the following morning, however, stands on a different footing. Appellant fully submitted himself into the hands of these two doctors, and permitted them to administer an anaesthetic so that they might make a more thorough examination of his person. The doctors certainly made the examination for the purpose of obtaining information to enable them to treat appellant's injury. That they might do so intelligently they desired to learn its full scope and effect, if possible. They were thus permitted to make the examination for that purpose. That they also had another purpose in mind, namely, to learn the scope and effect of the injury for the benefit of the respondent, in no way changed their relation to the appellant. No doubt respondent, through its agents, had a right to obtain from appellant all the information with respect to the cause and extent of the injury he was willing to impart to them; but in obtaining such information respondent had to exercise some discretion in selecting its agents. If it selected two skilled physicians and surgeons, and thus led appellant to believe or assume that those physicians sought information from him with a view of prescribing for his injuries, then such information is privileged under the statute, regardless of the fact that the doctors sought the information for the further purpose of disclosing it in a court of justice in case appellant brought an action for damages against the respondent. If the doctors desired to obtain information for the latter purpose only, they should have explained the matter fully to appellant, and should have told him that.

they sought the information for the purpose of imparting
it to respondent, and not for the purpose of aiding him. If,
under the latter circumstances, the injured person permits
an examination, or imparts information, no confidence is
abused, and no statute is invaded, and hence he may not be
heard to complain; but persons who are injured by acci-
dents of any kind should be treated fairly by the skilled
physicians who seek information of the character protected
by the statute. The statute is plain, and its purpose is just
and humane. It seems to us that it is the duty of the courts
to give the statute full scope and effect; but, in doing so,
to prevent, if possible, either party from gaining an advan-
tage contrary to the true spirit and intent of the statute.
We are clearly of the opinion that the court erred in per-
mitting Drs. Landenberger and Van Cott to testify to what
the appellant may have told them, and to what they dis-
covered in making the examination of his person on the
morning after the accident.

It is contended by respondent, however, that, although
we should determine that the court did err in admitting the
testimony of the two doctors just referred to, such error
would not be fatal to the judgment for the reason that the
evidence which was admitted at most related to an issue
which was made immaterial, because the appellant had not
established negligence on the part of respondent, and that
the jury, by returning a general verdict for respondent,
necessarily so found. The general rule undoubtedly
is to the effect that, when the court admits incom-
petent evidence upon a material issue, all the party
against whom such evidence is admitted is required to do
is to produce the record disclosing such to be the fact and
his objection and exception, and from this the legal infer-
ence arises that the error is prejudicial to such party's rights,
and hence constitutes reversible error. The opposite party
may, however, show from the record, if he can, that the
error is nevertheless not fatal to the judgment. The ques-
tion then arises, which, in the nature of things, must be a
judicial one, whether, in view of the record which is pre-

sented to the reviewing court, the alleged error is prejudicial, or whether the judgment, notwithstanding such error, should stand. In *McPhail v. Buell,* 87 Cal. 115, 25 Pac. 266, it is, in substance, held that error in admitting evidence will not be sufficient to reverse the judgment, if it is made to appear from the record that appellant in no event was entitled to recover. In *Clavey v. Lord,* 87 Cal. 413, 25 Pac. 493, it is held that the admission of incompetent evidence against a plaintiff which relates to an issue, which is made immaterial by reason that another issue which is vital to the right of recovery is found in defendant's favor, will not be sufficient to reverse a judgment. *In re Kennedy,* 104 Cal. 429, 38. Pac. 93, the rule is stated in the syllabus as follows: "Error in the admission of evidence is ground for reversal, unless the appellate court can see from the record that appellant was not injured." In 2 Spelling, New Tr. and App. Pro., p. 1484, the author says: "Whether an error has prejudiced a party is a judicial question, to be determined in each case according to the character of the error and circumstances shown by the record. Being such, and the question of whether or not it has been prejudicial in its consequences being uniformly decided by reference to the record, it is difficult to see any place for the operation of what is called a 'presumption of prejudice.' As a matter of practice, cases are not reversed for error, unless, and until, from its character, and in view of the whole case presented by the record, there is at least a possibility of injury." This, we think, is what is meant by section 3285, Comp. Laws 1907, which provides that "no exception shall be regarded unless the decision excepted to is material and prejudicial to the substantial rights of the party excepting." Nor can it change the rule because, as in this case, all the evidence is not certified to this court. A party may present only so much of the proceedings had in the trial court as will show and illustrate the ruling and consequent error of which he complains. If in doing so the record as presented by the complaining party only shows

36 Utah—35

that a material error has been committed, and the opposite party does not supplement appellant's record so as to make it appear that the alleged error is not prejudicial, the appellant must prevail, and the judgment must be reversed. Where, however, the record as presented by the appellant, whether it contains all or only a part of the evidence and proceedings, upon its face shows that the error complained of is in fact not prejudicial, and that no other judgment is permissible in view of the whole record as presented, then the judgment must stand. This must be the result regardless of whether the prevailing party brings up that portion of the record which discloses the fact that the error is not fatal to the judgment, or whether it is made to appear from the record as prepared by the appellant. Such a rule reflects justice not only upon the litigant who is entitled to enforce a judgment which has been rendered in his favor in substantial compliance with the forms of law and is meritorious, but it also reflects justice upon the general public, which must, in a large measure at least, contribute to the expense of maintaining courts.

Applying the foregoing rules to this case, we cannot see wherein appellant can justly complain. His testimony upon which he relies to establish respondent's failure to discharge its duty is in the record. If from this testimony it is not made to appear that the respondent was guilty of negligence or in any way derelict in discharging any duty which it owed to appellant at the time of and under the circumstances the accident occurred, then the appellant cannot recover, upon the ground that he has failed to make a case; and if he has failed to make a case against the respondent, then the question of whether the appellant was injured, or the extent thereof, is immaterial. That the jury were fully justified in finding against appellant upon the issue of respondent's negligence, to our minds, is not left in doubt when reference is had to appellant's own statements made under oath when on the stand as a witness in his own behalf. He, in substance, testified: That on the 13th day of April, during the daytime, he was a passenger.

on one of respondent's street cars going south; that he told the conductor when he paid his fare that he wanted to get off at Ninth South Street; that on approaching the crossing of said street the conductor "kind of slackened the car;" that the conductor did not give any signals "that I know of;" that before the speed was slackened the car was running at ordinary speed; that in nearing the crossing the car slowed down, and "it wasn't running very fast," and he went from the inside of the car and stood on the rear platform, and from there stepped onto the car step. "Q. Then what happened while you were standing on the step? A. Then the car started to the south side. Q. In what manner did it start? A. Just as usual, I guess, only she was quick to start. Q. Then what happened to you when the car started quickly? A. Then I fell off." On cross-examination appellant said: That the car did not stop, but was in motion all the time; that he did not see nor hear that the conductor signaled or told the motorman to stop the car; that he had it in mind that the car stopped on the north side of the street whether there was any one to get on or off the car or not.

The foregoing, in substance, is all the evidence there is upon the question of respondent's negligence. From what fact or facts disclosed by the foregoing statements could the jury infer that either the conductor or motorman was negligent? Concede that appellant told the conductor that appellant wanted to alight at Ninth South Street. Concede farther that the car slackened its ordinary speed in approaching that street. Still there is absolutely nothing to indicate that the conductor was not going to stop the car when the usual stopping place at that point was reached. What right had a jury to infer that the north side of the street, rather than the south side, was the usual place for stopping? But appellant says he assumed this. How would this impose the duty to stop upon respondent? The fact remains that, so far as the evidence discloses, neither the conductor nor the motorman knew appellant wanted to alight on the north side of the street. Merely to tell the conductor that appel-

lant wanted to alight at Ninth South Street might mean
either side, and, so far as imposing any legal duty upon the
conductor was concerned, it meant the usual stopping place
at that point.  Appellant's right to recover is grounded upon
negligence, and, unless negligence can be inferred from the
acts and conduct of respondent's employees who were in
charge of the car in question, appellant cannot recover.
Surely, so far as the evidence discloses, the motorman did
nothing of which appellant could complain.  Nothing is
made to appear that the motorman knew that appellant was
standing on the step, when, as appellant says, the car was
"quick to start," after it had slackened speed.  Nor is there
any fact shown from which it may be inferred even that the
conductor knew; but, if this were inferred, nothing is made
to appear that the conductor could have prevented the car
from crossing to the other side of the street.  Can negli-
gence be inferred from the fact that the car, on approach-
ing the crossing, slackened speed ?  Is it negligence to do
this when a car is approaching a street crossing on which
persons may be passing to and fro, although the car is not
scheduled to stop at that point ?  Again, is it negligence,
after slacking speed in approaching a crossing, to again in-
crease the speed before coming to a full stop ?  There may
be circumstances when to do so might be a question of fact;
but certainly there is nothing in this case which would jus-
tify any reasonable mind to infer negligence from what
appellant says occurred in view of all the circumstances as
he relates them.  The following cases, which in their facts
are as nearly parallel with the case at bar as can be found,
clearly sustain the foregoing conclusion:  *Blakney v. Seat-
tle Electric Co.,* 28 Wash. 607, 68 Pac. 1037; *Sims v. Met.
St. Ry. Co.,* 65 App. Div. 270, 72 N. Y. Supp. 835. See,
also, Nellis on Street Railroad Accident Law, pp. 134, 210,
and Nellis on Street Surface Railroads, pp. 451, 452.  At
all events, the jury were fully justified to find the issue of
negligence in favor of respondent.  This issue not only was
the vital issue, but it was one to which all other issues were
secondary and subordinate.  The appellant cannot recover

if he failed to sustain this issue. True, he might have failed even if he sustained this issue; but we think it is quite clear that the verdict was not, and, in the nature of things, could not have been, against appellant upon the ground of contributory negligence. But assuming that it was, then again the verdict is thoroughly justified by the facts. Nor was there anything to which the two doctors testified that was relevant to the issues of either negligence or contributory, negligence; but that portion of the testimony which we hold was erroneously admitted related entirely to the injuries and consequent damages appellant claimed to have sustained. If appellant failed to establish the issue of negli¬ gence, the question of whether he was injured or damaged was immaterial, and hence any error that may have been committed in admitting evidence on the latter issue was error without prejudice and cannot affect the judgment.

We remark further that it is likewise true that the statement of Dr. Van Cott which was admitted in evidence may have reflected upon appellant's contributory negligence; but, if this be conceded, this in no way affected the issue of respondent's negligence. The statement in writing which appellant gave to Dr. Van Cott, when compared with appellant's testimony at the trial, differed only in this: That in the written statement it is stated that appellant jumped and fell, while in his testimony he said he fell from the car. If, in view of all the circumstances detailed, he jumped, he clearly was guilty of contributory negligence; but if he did not jump, but fell from the car, then, nevertheless, there is nothing disclosed from his testimony, nor from the surrounding circumstances, from which the jury or any one else could infer negligence upon the part of respondent's servants which could reasonably be said to have been the proximate cause of appellant's fall and consequent injury.

For the reasons above stated, the error which it is contended the court committed in permitting Dr. Van Cott to testify that appellant was conscious and rational when he gave and signed the statement is also immaterial. As we have already pointed out, there was no essential difference

between appellant's testimony at the trial and that contained in the written statement. If the statement therefore was substantially true, and the jury was required to assume it to be so since he practically repeated it under oath, it cannot affect the judgment in any way whether the court erred in this regard or not. Moreover, it is manifest that the verdict of the jury is not based upon this statement. We have thus given the appellant what seems to us to be full benefit of all his alleged errors. While it is our duty to pass upon all material assignments of error and to give them full scope and effect, it is equally our duty to refuse to reverse a judgment where it is made to appear from the very record presented for review that the errors assigned, in view of all the facts and circumstances disclosed by the record, are not prejudicial to the rights of the complaining party.

In conclusion we desire to add that, in order to avoid any misconception of the scope of our holding, we repeat that we refuse to reverse this judgment upon the sole ground that in our judgment the errors committed by the court in the admission of the testimony of the two doctors, in view of the peculiar circumstances of this case, were entirely immaterial, and hence not prejudicial errors. Further, that the statement which was made by appellant to Dr. Van Cott, and which we have held not to have been prejudicial, is held not to have been so: (1) Because there is nothing in the statement itself from which it is reasonable to assume that it was necessary for the doctor to know, even though he intended to treat appellant; (2) because the doctor testified that it contained nothing to that effect: and (3) because, under all of the facts and circumstances disclosed by the record, the trial court was justified in ruling the statement as not within the statute, and hence not within the privilege. We do not desire to be understood as laying down a hard and fast rule as to when a particular statement is or is not within the statute; but we hold that that must be determined in each case in accordance with the peculiar facts and circumstanes and in accordance with the rules referred to in this opinion.

For the reasons aforesaid, the judgment therefore should be, and it accordingly is, affirmed, with costs to respondent.

McCARTY, J. (concurring).

I concur in the foregoing opinion. Appellant introduced an abundance of evidence tending to show that he received a severe, painful, and permanent injury when he alighted or fell from the car. While it may be said that there is an apparent conflict in the evidence as to the extent of appellant's injury, yet the evidence introduced both by appellant and respondent, without conflict, shows that he was severely injured. Therefore the conclusion is irresistible that the failure of the jury to return a verdict in appellant's favor was not due to failure of proof to show injury, nor because of any conflict in the evidence on this point. Dr. Van Cott in his testimony says (referring to his first visit to see appellant after the accident occurred): "I asked him where he was injured, and took hold of his knee and started to move it, and there was considerable pain there, and he could not move the limb very well without considerable pain. . . . I could not examine him there satisfactorily, as it was so painful." On cross-examination he testified, in part, as follows: "Q. He was in great pain, was he not, at that time? A. Well he was in some pain. Q. Did he tell you he was in great pain? A. No, he didn't say 'great.' He said it was quite painful. Q. You asked him a great many questions about where he was hurt, I suppose? A. Yes, sir. Q. And knew that he had been hurt by falling, or something of that kind? A. Yes, sir. Q. You took a statement from him as to the manner in which he got hurt, did you? A. Yes, sir. Q. You took that statement from him, asked him questions pertaining to that matter, just about as soon as you arrived on the scene? A. No. Q. When did you take it? A. After I looked him over. Q. You made an examination of him beforehand? A. Yes, sir. Q. And then you began to ask him about— A. About what happened."

The statement here referred to is the statement which was signed by appellant and admitted in evidence over his objection, and which is set forth in full by Mr. Justice Frick in the foregoing opinion. Dr. Landenberger, another witness for respondent, testified: That when he, in company with Dr. Van Cott, visited the appellant on the morning after the accident, they gave him an anaesthetic and made an examination of his injured limb; that they gave him the anaesthetic "to make him unconscious, . . . . so that he would not be suffering pain from the manipulation of the leg." He further testified: "I arrived at the conclusion that he did not have a fracture, and that he had simply a contusion around the hip joint somewhere, a bruising." Therefore, conceding for the purpose of this appeal that the doctors, when they visited appellant on the occasions referred to, did so in their professional capacity, and the relation of physician and patient was thereby created between them and appellant, and that any information they obtained from appellant respecting the nature and extent of his injury came within the statute and was privileged, yet the case ought not to be reversed, because, as I read the record, the error in admitting the evidence on this point could not have been prejudicial to the rights of appellant. If the jury had found the issues in favor of appellant and had returned a verdict in his favor for a sum less than evidence, when considered in its most favorable light to him, showed he was entitled to, it might be urged with considerable force that the evidence complained of was prejudicial on the ground that it tended to minimize plaintiff's injury; but, as the jury failed to find for appellant in any sum, and the irresistible conclusion being, as I read the record, that such failure was not due to any lack of evidence to show that appellant received a grievous injury, there being no conflict in the evidence on this point except as to the extent of the injury, I fail to see how, or in what way, appellant could have been prejudiced by the evidence complained of.

Coming now to the written statement signed by appellant which purports to recite the facts leading up to and con-

nected with the happening of the accident, I am clearly of
the opinion that it was admissible in evidence. The record
shows that the statement was not obtained, and that it was
not necessary, to enable Dr. Van Cott to prescribe for ap-
pellant's injuries. In fact, the record affirmatively shows
that the statement was obtained after Dr. Van Cott had
made an examination of appellant's injuries and had done
all he could on that occasion to relieve his pain; but, assum-
ing for the sake of argument that the statement technically
came within the statute and was a privileged communica-
tion, yet, as I view the record, its admission in evidence
could not have been prejudicial error. There is no sub-
stantial conflict between the facts as recited in the statement
and the evidence given by appellant himself. In the first
place, the statement recites that, "when I (appellant)
jumped, I fell on my left side *and could not get home with-
out assistance.*" This standing alone is strong, if not con-
clusive, proof that he was badly injured. It further recites
that: ":The car was going so fast it threw me to the ground.
I did not tell the conductor to stop on the north side, but
thought he always did stop on the north side, and that is
the reason I jumped." On cross-examination the appellant
testified, in part, as follows: "Q. The car was not stopped,
was it? A. No. Q. The car was in motion at the time
you went off the car, wasn't it? A. It was pretty near
stopped. I can't remember that exactly, for sure. After I
fell off, I was out of my mind. . . . Q. But you do
remember that the conductor asked you why you jumped
off, and that you replied that you thought they were going
to stop? A. Yes, that is the only thing I can remember."

It will thus be seen that this evidence, when considered
in connection with that portion of appellant's testimony re-
ferred to in the opinion written by Mr. Justice Frick, is in
harmony with the written statement, with the exception that
in his oral evidence he says that he requested the conductor
to stop, and in the written statement he says that he made
no such request.

STRAUP, C. J. (dissenting).

I dissent. The case is one to recover damages for alleged personal injuries. The defendant denied the negligence and all other material allegations alleged in the complaint, and affirmatively pleaded contributory negligence. Upon the evidence introduced by both parties the case was submitted to the jury, who rendered a verdict for the defendant. During the trial the testimony of two physicians relating to the plaintiff's injuries, and a written statement made by him to one of them, were admitted in evidence over the plaintiff's objections. The plaintiff appealed from the judgment and assigned such rulings as error, and presented them for review. No other assignments of error are made by either party. The bill of exceptions, as settled by the court, purports to be all the evidence bearing upon and illustrating such rulings. In the certificate settling the bill, it is recited that the bill "contains all the evidence offered and admitted in the trial of this case illustrating the objections and exceptions and assigned errors therein contained and in accordance with the stipulation of the defendant." In the stipulation of the defendant, it is recited that the bill "contains all the evidence produced and had at the trial illustrating the objections and exceptions therein contained." The only evidence contained in the bill is, first, testimony of the plaintiff, and that of a physician called in his behalf, who testified concerning his injuries. Then follows a recital in the bill: "And other witnesses were sworn, and examined on behalf of the plaintiff herein, and the plaintiff rested. And thereupon various witnesses were sworn and examined on behalf of the defendant herein, whereupon the following proceedings were had." No part of the testimony of such "other witnesses" examined by the plaintiff, nor of the "various witnesses" by the defendant, is set forth in the bill. Following such recital is the testimony of the two physicians called by the defendant and who also gave testimony concerning plaintiff's injuries. No objections nor exceptions are contained in the bill except those relating to rulings made in respect of testimony of plaintiff, the physicians, and the written statement. It thus, I think, manifestly appears that

the bill was made up to explain and illustrate the rulings referred to, and purports to contain all of the evidence pertaining to such rulings, and that it was not made up to illustrate the sufficiency or insufficiency of the evidence to show negligence on the part of the defendant, nor any ruling made by the court which related thereto, and that it does not purport to contain the evidence on such issue. Such is not only shown by the certificate of the judge who settled the bill, but is also affirmatively shown on the face of the bill itself; and it is frankly admitted by the respondent in its brief that "the record on appeal in this action does not purport to contain all the evidence introduced at the trial of the cause, but only contains, and only purports to contain, part of the evidence."

The plaintiff was an employee of the defendant, engaged to do trackwork. He was a passenger on one of the defendant's street cars operated in Salt Lake City. While alighting therefrom he was injured, as alleged by him, through the defendant's negligence. He testified that he boarded a car running South on South East Street at the intersection of that street and Third South Street. He desired to leave the car at Ninth South Street, which was near his home. He entered the car and took a seat. When the car was within about a half block of Ninth South, the conductor collected the fare, which was paid by plaintiff. At the time of paying the fare, the plaintiff told the conductor that he wanted to get off at Ninth South. The conductor replied, "All right." The speed of the car was slackened, and the plaintiff arose and walked to the back platform of the car. He testified that he did not know whether the conductor pulled the bell cord or not, but thought that he did. He stood there, as testified to by him, "two or three seconds, or something like that," and "just when they was going slow I stepped down on the step. I thought they were going to stop. . . . It was pretty near stopped, maybe not quite stopped. I can't remember that exactly for sure." While he was so standing on the step, the car started up quickly, and he, as testified to by him, "fell off." He was thrown or fell to the ground at the north side of Ninth South, striking on his hip.

He testified that he thought the car would stop on the north side of that street, and that cars coming from the north usually stopped at such place. After he fell or was thrown to the ground, the car stopped. The conductor ran back and asked the plaintiff his name and if he was hurt. Plaintiff asked him "why he didn't stop the car as he told me. Then he told me that the motorman started the car." A lady assisted him part way home. Then his daughter and others also assisted him. His daughter telephoned to the defendant's office for a physician. Some one from its office telephoned Dr. Landenberger, who was on its regular medical staff, giving him the plaintiff's name and address. Dr. Landenberger telephoned Dr. Van Cott, who lived but a short distance from the plaintiff. Dr. Van Cott testified that he was not on the regular staff of the defendant, but attended emergency cases for it when the defendant's physicians on the regular staff could not go. He testified: "I suppose the doctor (Landenberger) was busy, and asked me if I would go down and see the case." In pursuance of such request, he visited the plaintiff on the evening of the accident. He testified: That he "went down there to see what was the trouble, and whether the patient needed any treatment in a medical way." That he introduced himself to the plaintiff, and told him he was a doctor, and that he was sent by the defendant "to see about his injury." That the plaintiff submitted himself to him "as a patient." That the plaintiff understood that he was a physician, and that he "came there for the purpose of treating him." That he found him dressed, sitting in a chair, and conscious. He asked him where he was injured, and "took hold of his knee and started to move it, and that there was considerable pain there, and he could not move the limb very well without considerable pain." That he "could not examine him there satisfactorily as it was so painful," and that he then telephoned Dr. Landenberger and told him about it and arranged with the plaintiff for an examination the next morning. He further testified: That he did not know whether he prescribed for the plaintiff or not, but supposed that he did. That, after he "looked him over," he asked the plain-

tiff "how it happened," and plaintiff told him. He then reduced to writing what the plaintiff told him and requested him to sign it. The plaintiff did so. The writing, so signed, is set forth in the opinion of the majority of the court. The witness took the writing and delivered it to the defendant. He further testified that his employment with the defendant required him, and it was usual for him, in such case, to obtain a written statement and "turn it in to the company." The next morning the witness and Dr. Landenberger visited the plaintiff. Dr. Landenberger testified: "I certainly told them (plaintiff and members of his family) enough so they understood I was a physician and had come there to examine him to see what we could find and do for him," and that the plaintiff, in that situation, permitted them to examine him. They placed him under the influence of an anaesthetic so as better to manipulate the limb and to make an accurate diagnosis, and especially to ascertain whether he had sustained a fracture of the upper part of the femur. Both these physicians, who were called to testify on behalf of the defendant, were permitted to testify, over the plaintiff's objections, as to the result of such examination, and to give their testimony that they found no evidence, nor symptoms, of any fracture, and no evidence of any injury, except slight bruises and a swelling about the hip, and that they reached the conclusion, and were permitted to express an opinion, that the plaintiff had sustained no fracture or other injuries, except a slight contusion and swelling about the hip. Dr. Van Cott further testified that he visited the plaintiff probably five or six times, and, in response to the following questions asked him, answered: "Q. All the time you were acting as his physician? A. Well, I was not acting as his physician alone. Q. Well, you were acting in the capacity of a physician to him? A. Yes, sir."

Dr. Calderwood, the physician who was called on behalf of plaintiff, testified: That he was called to see the plaintiff on the 26th day of April (the accident having occurred on the 13th day of April); that, on an examination, found him suffering from an injury to the hip; that he was unable to

stand on his leg or raise his foot to any extent without considerable pain; that he was unable to ascertain the exact nature of the injury, and caused the patient to be removed to the hospital on the same day; that for several days he was unable to tell definitely whether the plaintiff was suffering from a dislocation or fracture; that finally a surgical operation was performed by cutting through the flesh and muscles of the upper portion of the thigh and laying the bone bare, and he then discovered a transverse fracture of the neck of the femur, the head or upper part of the femur broken off; that plaintiff's leg was placed in a plaster cast; that he remained at the hospital until the 21st day of June; that he examined the plaintiff just before the trial and found the leg about three-fourths of an inch shorter than the other, a slight deformity at the head of the femur, causing some stiffness which rendered the plaintiff lame; and that the condition was permanent. The plaintiff also testified as to the nature and extent of his injuries, and to facts tending to show a serious injury. After the testimony of the plaintiff and the three physicians had been received, the court, over the objections of plaintiff, received in evidence the written statement signed by the plaintiff.

The rulings of the court admitting in evidence the testimony of the two physicians called by the defendant, and the written statement signed by the plaintiff, are the only questions presented for review. It is quite clear to me that the relation of physician and patient between Drs. Van Cott and Landenberger and the plaintiff was sufficiently shown. Upon the evidence adduced, such a relation existed between Dr. Van Cott and the plaintiff as well on the evening of the accident, when Dr. Van Cott visited him, as when Dr. Van Cott and Dr. Landenberger visited him on the following morning. True, a more extensive examination was made the following morning; but the purpose of the visit was the same, and, as testified to by Dr. Van Cott, he made the first visit (when he obtained the written statement) "to see what was the trouble and whether the patient needed any treatment in a medical way," and that the plaintiff understood "that he came there for the purpose of treating him," and

that "the plaintiff submitted to him as a patient, and that he acted in the capacity of a physician to him." There is also the evidence that the plaintiff was an employee of the defendant, that within a short time after receiving his injuries his daughter telephoned to the defendant's office for a physician, and that Dr. Van Cott, by reason of such message, visited the plaintiff.

It, however, is said that the information which Dr. Van Cott obtained from the patient, and which was contained in the written statement, was "not necessary to enable him to prescribe or act for the patient," and hence was not privileged. The purpose of the statute "is to facilitate and make safe full and confidential disclosure by patient to physician of all facts, circumstances, and symptoms, untrammeled by apprehension of their subsequent enforced disclosure and publication on the witness stand, to the end that the physician may form a correct opinion, and be enabled safely and efficaciously to treat his patient;" and that the "word 'necessary' should not be so restricted as to permit testimony of statements or information in good faith asked for or given to enable intelligent treatment, although it may appear that the physician might have diagnosed the disease and prescribed for it without certain of the information, so that it was not strictly necessary." (*In re Will of Bruendl,* 102 Wis. 45, 78 N. W. 169.) The word "necessary" is susceptible of various meanings. (5 Words and Phrases, p. 4705; 29 Cyc. 327.) As used in the statute, it should not be construed to mean as importing that which is indispensable, or an essential requisite, or inevitable, but that which is conducive to, useful, needful, convenient, or appropriate. Though the statute is in derogation of the common law, yet it should receive a liberal, and not a strict, construction. (Section 2489, Comp. Laws 1907.)

It is principally urged that the information acquired by the physician and contained in the writing was not necessary, because of the question prepounded to Dr. Van Cott by counsel for the defendant, and which is set forth in the opinion of Mr. Justice Frick, and in which the physician was asked if the information obtained "was necessary to

treat" the plaintiff had he desired to do so, and the answer, "No, sir," which the witness made in response to the question. A timely objection was made to the question on the grounds that it called for incompetent testimony and for a conclusion of the witness. The overruling of the objection and permitting the answer is assigned as error and presented for review. I think the trial court erred in the ruling. Whether the information obtained was or was not necessary to enable the doctor to prescribe or act for the patient was a judicial question to be determined and decided by the court in passing upon the admissibility of the proffered evidence. (*In re Redfield's Estate,* 116 Cal. 637, 48 Pac. 794.) In determining it, it was proper enough to lay before the court all the facts and circumstances bearing upon it. When testimony of a physician is offered on the question, it, like that of any other witness, must call for the facts, and not conclusions, and when admitted can only be evidentiary, and not in any sense conclusive. I approve of the doctrine heretofore announced by this court (*Munz v. Salt Lake R. Co.,* 25 Utah 220, 70 Pac. 852, and other courts; 10 Ency. Ev. 120, and cases there cited) that, when the relation of physician and patient is shown, the inference or presumption of fact arises that the information sought and obtained by the physician was reasonably necessary "to enable him to prescribe or act for the patient." Such inference or presumption was not overcome by the erroneous admission in evidence of the mere conclusion of the doctor. The relation having been shown, it was further made to appear that the physician called upon and visited the patient to ascertain "the trouble," and what treatment was needed and required. He found the patient dressed and suffering pain in his leg and hip and complaining of difficulty in standing on his leg and of a restricted movability. The patient's naked leg or person was not exposed to the physician on that visit. The physician took hold of the leg and found that the patient suffered considerable pain as an attempt was made to move it. Before the physician could properly "prescribe or act for the patient," it was necessary for him to diagnose the case and ascertain, if he could, the cause or

causes to which the symptoms manifested by the patient, and complained of by him, might be traceable. In ascertaining such cause, it was not only natural, but necessary (useful, needful, appropriate) to inquire what, if any, violence had been inflicted to the parts complained of, or recent injuries sustained, or accidents encountered by the patient. If the patient had informed the physician that he had met with no accident and had received no violence, it is but natural to suppose' that the physician might have been led to believe that the patient was not suffering from a fracture or other injury of the leg, and likely would have looked for other causes to which the symptoms complained of might be attributed.

On the other hand, the physician being informed that the patient met with an accident, it was necessary for the physician to further inquire as to the particulars thereof to enable him to ascertain the kind and degree of violence inflicted, and the character of injury naturally to be expected therefrom. To ascertain that it was necessary for the patient to inform the physician the manner in which the patient jumped off, or was thrown from, the car, and struck the ground, the speed of the car and other facts and circumstances tending to show the character and degree of the violence inflicted. I think all that was useful and appropriate to aid the physician in determining whether the plaintiff probably sustained a fracture, sprain, bruise, or other injury, which caused the symptoms complained of. The statements made by the patient to the physician that the car kept on going, and he got off, that it was going so fast it threw him to the ground, that when he jumped he fell on his left side and could not get home without assistance, were necessary and proper information to enable the physician to make a proper diagnosis of the case, and to determine whether the ailments and symptoms complained of were probably due to violence or other causes, and to ascertain the effects of the injury. Indeed, from what the physician saw and was told him that evening by the patient (and the physician testified that the information contained in the written state-

36 Utah—36

ment was not obtained nor acquired from any source except from the patient), his suspicion that the plaintiff might be suffering from a fracture or other injury due to violence was sufficiently aroused as to cause him to make necessary arrangements for a further examination in company with Dr. Landenberber on the following morning; and the examination which was made by them the next morning was, as testified to by both of them, for the purpose of ascertaining whether the plaintiff had sustained a fracture or dislocation of the femur, or other serious injury. There may be particular expressions in the statement which were not necessary to aid the physician in the manner indicated; but I am looking at the statement and considering it as a whole and as it was offered and admitted in evidence. Though the writing contained some statements which were not necessary "to enable the doctor to prescribe or act for the patient," and others which were reasonably necessary, such statements ought to have been segregated when the writing was offered, and those only which were not so necessary should have been offered, and those only could properly have been admitted; and since the writing was admitted as a whole, and no offer of segregation made, it was error to receive it in evidence if any part of it contained statements or information which was acquired by the doctor in attending the patient, and which was reasonably necessary to enable him to prescribe or act for the patient. So considering it, I think the substance of the statement, at least in part, was "information acquired" by the physician "in attending the patient which was necessary to enable him to prescribe or act for the patient."

Now, the bare assertion of the physician, his mere conclusion (it amounted to nothing more), that the information was not necessary, was neither admissible nor conclusive of the question. He could only be permitted to testify to facts and circumstances from which the court could determine and decide the ultimate fact as to whether the information was or was not necessary. This he did not do. Because he was a doctor did not entitle him to also determine a judicial question. The competency or admissibility of evi-

dence is to be determined by the court, not the witness. Upon the undisputed facts, I do not see how the physician was in a position to intelligently prescribe or act for the patient without acquiring information, as to the character and degree of violence inflicted. He was put in possession of such information by the patient informing him of the immediate movements and speed of the car and the manner in which he alighted therefrom and struck the ground. The knowledge of such facts naturally led the physician to the conclusion that the symptoms and pain complained of by the patient were due to the violence of which the physician was informed, and caused him to make arrangements for a further examination on the following morning, when it is conceded that both physicians "acted for" the plaintiff. Suppose that, on the evening of the accident when Dr. Van Cott visited the plaintiff, instead of receiving the information which was received, he had been informed by the plaintiff that he was not on the car, and had not met with any accident, and had received no violence of any kind; or that he was on the car, and in alighting therefrom he stumbled and fell, but had received no injury whatever; that he, unaided, immediately arose and walked to his home and went about his business as usual, and was wholly unharmed—is it likely that Drs. Van Cott and Landenberger would have visited him the next morning, administered an anaesthetic to him, and manipulated his leg to ascertain whether he had sustained a fracture or dislocation of the femur?

Furthermore, in determining whether the information acquired was or was not necessary, due consideration must be also given to the question as to whether the patient, under all the circumstances, had reason to believe, and did believe, that it was proper and necessary to give the information to enable the physician to prescribe and act for him, for it is the confidence imposed by the patient, by reason of the relation, which primarily makes the acquired information privileged when obtained by the physician as in the statute prescribed. Of course, it is not everything which the patient may say or communicate to the physician that is privileged under the statute; but, when a physician seeks

information from his patient in respect of a particular subject or question, the patient may ordinarily assume that the physician in so doing is acting in good faith, and that the information so sought is proper and reasonably necessary to enable the physician to prescribe or act for him; and if, under all the circumstances, the patient had reason to believe, and does believe, that the information so sought by the physician and given by the patient was necessary to enable the physician to prescribe or act for him, and in consequence thereof the patient made communications to the physician which he would not otherwise have made, I think the information so acquired falls within the very letter and spirit of the statute as a confidential and privileged communication. (10 Encyclopedia of Evidence, 116, 118, notes and cases.) I therefore think the written statement was improperly admitted. If the information acquired was privileged, as I think it was, the physician could not cause it to be reduced to writing, obtain the patient's signature thereto and then, by delivering the writing to the defendant, without the knowledge or consent of the patient, make it evidence, and thus do indirectly what the statute directly forbids. It is not claimed that the writing was given with the understanding that it was to be delivered to the defendant, or that the contents thereof were otherwise to be disclosed, or that the consent of the plaintiff to deliver the writing or disclose the contents was had or obtained.

I concur with the majority of the court in the ruling that it was error to permit the two physicians called by the defendant to testify as to the result of the examination made on the morning following the accident, and as to the condition of the plaintiff as disclosed by their examination. This holding, of course, is upon the theory that the relation of physician and patient then existed. I do not see anything in the case which warrants the conclusion that Dr. Van Cott on the first visit, when he obtained the written statement from the plaintiff, was representing and wholly acting for the defendant in the capacity of a physician or some other agent, but that during the night, and by the next morning, such relation was transformed, and he then became the

physician of the plaintiff and acted for him in such capacity. I think he acted in the capacity of a physician for the plaintiff on the first visit as well as on every other visit made by him.

But I do not agree with the majority of the court that the admission of the testimony held to be erroneous was not prejudicial. It is said not to be prejudicial because on the partial record of the case as presented there is not sufficient evidence to show the defendant guilty of the alleged negligence, and hence the verdict which the jury rendered in favor of the defendant was right. It is conceded that all the evidence is not before us, and that no assignment of error is made by either party raising the question of insufficiency of evidence to show negligence on the part of the defendant. As I have already shown, the bill of exceptions is made up to illustrate the rulings made in admitting in evidence the testimony of the two physicians, and the written statement made by the plaintiff and delivered to one of them. The bill purports to contain all the evidence bearing on such questions. It is so stipulated by the parties, and certified to by the trial judge. There is no certificate or stipulation, or other statement, that the bill contains all the evidence in the case, or all or any of the evidence bearing on the question of the defendant's negligence, or that of the plaintiff. The bill itself contains no evidence on such issues, except the testimony of the plaintiff wherein he described his relation to the defendant, when and where he boarded the car, the things done and said at and about the time of the accident, the manner in which it happened, the nature and extent of his injuries, and the visits of the physicians. While there may be some things in respect of the plaintiff's testimony contained in the bill which were unnecessary to explain or illustrate the rulings complained of, still it is apparent that it was somewhat difficult to set forth in the bill the testimony of the plaintiff showing the nature and extent of the injuries, the manner in which they were produced, and the amount of violence inflicted, without also setting forth his testimony in the bill concerning the happening of the accident and the things then said and

done.' But, conceding that the bill in this way contains some evidence bearing on the question of the defendant's negligence, it also must be conceded that it does not contain all the evidence bearing upon such question, nor does it purport to do so, for, as before observed, in addition to the stipulation of counsel, and the certificate of the judge, that the bill only contains all the evidence illustrating the rulings heretofore referred to, the bill affirmatively shows and recites that "other witnesses" were sworn and examined on behalf of the plaintiff, and that "various witnesses" were sworn and examined on behalf of the defendant, and that the testimony of such witnesses is not set forth. The bill, as settled by the judge, does not purport to contain even all the testimony given by the plaintiff on the issues of negligence, nor that it was all the testimony given by him on the trial of the cause. The stipulation of counsel and the certificate of the judge show that it was all the testimony or evidence given by him illustrating the rulings complained of.

Now, it is manifest that the verdict of the jury, as rendered by them, was based, not upon the portion of the evidence before us, but upon the whole evidence adduced at the trial of the case; and the question of insufficiency of evidence to show negligence on the part of the defendant is to be determined from the whole, not a part, of the evidence adduced on such issue. The conclusion, however, reached by the majority of the court, that there was no sufficient evidence to show such negligence, admittedly is based upon a review and consideration of only a part of, and not all, the evidence adduced on such issue. Not having all such evidence before us, I do not see how a proper conclusion can be reached that the plaintiff was not entitled to go to the jury on such issue. Furthermore, we have heretofore several times declared that the object of an assignment of errors is to apprise the appellate court and opposing counsel of the specific question to be presented for consideration and review, the points intended to be relied upon and to limit discussion and consideration to those points; and we have frequently held that a question of law not raised by an as-

signment of error will not be reviewed nor considered by us. Notwithstanding these repeated adjudications, I think the majority of the court nevertheless have considered and reviewed the question of law as to the sufficiency of evidence to show negligence upon the part of the defendant when there was no assignment of error made by either party raising such a question, and, too, when all the evidence bearing on such issue is not before them. Neither does the record disclose that a motion for nonsuit was made, nor that the defendant moved for a directed verdict, nor that the question of law now considered and reviewed by the majority of the court was otherwise presented to the trial court, and it given an opportunity to rule thereon, nor that any ruling was made by it on such a question. If, when the bill of exceptions was proposed, showing the objections and rulings in respect of the admission of the evidence complained of, and only containing the evidence illustrating such rulings, the defendant desired to defend the verdict and judgment which was rendered in its favor, on the ground that there was no evidence to entitle the plaintiff to go to the jury on the question of the alleged negligence on its part, it ought to have proposed proper amendments containing all the evidence on such issue, and illustrating the rulings of the trial court on such question, and caused them to be settled in the bill. If such had been done, the respondent then would have been in a position to make cross-assignment of errors as provided by our rules and to urge a review of such question. Not having done so, and the bill not affirmatively showing that it contains a history, or the evidence, of such proceedings, and on its face not purporting to contain them, we are not justified in reviewing it.

I am not saying that an assignment of error is necessary to determine whether an error committed by the trial court was or was not prejudicial. What I do say is that a review of a question of law, like that of insufficiency of evidence to sustain an issue essential to a litigant's cause, cannot properly be had without a direct or cross-assignment of error, and proper specifications raising such question, and a presentation of all the evidence adduced on such issue by a

record affirmatively showing that it contains all such evidence.

I, of course, accede to the rule that a judgment will not be reversed except for prejudicial error; but whether an erroneous ruling was injurious to the party against whom it was made depends upon the effect or influence it could have had upon the verdict or the result of the trial. From an early time the rule has been, and is now, stated to be that, where error is shown, injury is presumed, unless the contrary appears affirmatively, and that, where error is shown, it will be presumed to have had an effect upon the result of the trial, unless the record affirmatively, not negatively, shows the contrary. (Hayne, New Tr. & App., sec. 287.) In an early case from California (*Jackson v. Feather River W. Co.*, 14 Cal. 19), Mr. Justice Baldwin said: "The rule is that every error is *prima facie* an injury to the party against whom it is made, and it rests with the other party clearly to show, not that probably no hurt was done, but that none could have been or was done by the error." Now, the majority of the court say that no hurt could have been done, or was done, by the error committed because, on the record as presented, there is no evidence to show negligence on the part of the defendant. The pertinent question, however, is: Does the record affirmatively show that upon all the evidence adduced at the trial on such issue the plaintiff was not entitled to go to the jury? I say the record does not so affirmatively show for the reason that it does not contain, and does not purport to contain, all the evidence adduced or the proceedings had on such issue. Without such an affirmative showing by the record, we are not apprised, nor can we judicially know, what evidence was adduced on such issue; and the question of whether the plaintiff was entitled to go to the jury on such issue depends upon, and can only be determined from a consideration of, all the evidence adduced thereon at the trial. And since the record does not show, and does not purport to show, all the evidence so adduced, it does not affirmatively show that the plaintiff was not entitled to go to the jury on such issue. To say, as is in effect said, that the plaintiff was required to show

that there was sufficient evidence adduced on such issue when no ruling thereon nor question arising therefrom is complained of by him, is to hold that he was required not only to clearly show error by the rulings of which complaint is made, and that it could have harmed him on a material issue in the case, but that he was also required to affirmatively show that he was entitled to recover or prevail on every other material issue.

Suppose, in a case declaring on a written instrument not itself importing a consideration, a valuable consideration, delivery, execution, and breach of the terms of the contract are all sufficiently and properly alleged. By the answer and proper pleadings all the material allegations are put in issue. The alleged signature of the defendant to the instrument, the party sought to be charged, is made a material issue. Upon the evidence adduced by both parties, the case is submitted to the jury, who rendered a verdict for the defendant. During the trial the plaintiff offered competent evidence tending to prove the defendant's signature to the writing. The court erroneously excluded it. The court also erroneously admitted evidence offered by the defendant tending to show that the signature was not his signature. A bill of exceptions is made up and settled illustrating such rulings, showing the objections made and the exceptions taken, and containing all the evidence bearing thereon, and all the proceedings had in respect thereof. The bill so settled and presented does not contain, and does not purport to contain, the evidence adduced on the questions or issues of consideration, delivery or breach of the contract. On a review of the rulings presented, and finding error was committed against the plaintiff, the appellate court could, in such case, as well as here, assert that no prejudice resulted because, on the record as presented, it is not shown that the plaintiff was entitled to go to the jury on the question of consideration, or breach of the contract, or on some other issue concerning which the evidence adduced or proceedings had were not presented by, nor contained in the record. The establishing of such a rule requires a party proposing a bill not only to do all that the statute requires of him, to state

the objection "with so much of the evidence as is necessary to explain it," and that a·draft of the bill proposed "must contain all the exceptions taken upon which the party relies," and that "the exceptions may be presented as briefly as possible," but he also is required to come here fortified with a complete history of the case, and to affirmatively show a *prima facie* right to recover or to prevail on 'every issue and question essential to his cause. To do so might require him to set forth in the bill a voluminous history of proceedings over which there is no controversy, and which in no sense illustrates the rulings complained of or the exceptions taken and relied on, and could serve no useful purpose except to prevent the appellate court from the indulgence of wrongful presumptions as to what took place by the proceedings had on such issues if not set forth in the record.

In the case in hand, the record sufficiently discloses that it was submitted to the jury on the issues raised by the pleadings and on the evidence adduced by both parties. The record does not disclose that such action or ruling of the court was in any particular questioned, or that the action of the court was in any manner invoked not to submit the case to the jury, or that any controversy arose over such a proceeding or question. In the absence of some showing to the contrary, we ought to indulge the presumption that the submission of the cause to the jury by the court was done properly on the issue of negligence as well as on every other material issue. What is the showing that the court did not properly submit the case to the jury on the issue of such negligence? A partial history of the case which admittedly does not contain, and does not purport to contain, all the evidence adduced on such issue.

When an appellant shows that error was committed in receiving incompetent testimony which directly bore on a material issue in the case, the presumption will be indulged that it affected the verdict or the result of the trial. The burden is then cast on the other side to show that it could not, or did not, affect the result. The plaintiff was required not only to allege and prove negligence on the part of the defendant, but he was also required to allege and prove

a resulting injury. To entitle him to recover, the one was just as essential and material as the other. The plaintiff testified to a state of facts tending to show a serious injury. The physician called in his behalf testified that the plaintiff sustained a fracture of the femur, and that the injury was permanent. The physicians called by the defendant testified that, from an examination made by them on the morning after the accident, they discovered no symptoms or indications of a fracture or other injury, and testified to the effect that there was nothing the matter with him except a slight external bruise, and a swelling about the hip. The testimony so given by them, and erroneously admitted, directly bore and related to a material issue. The jury had the right to believe them, instead of the plaintiff and the physician called in his behalf, and to find the facts as testified to by them. So believing and so finding from the incompetent testimony before them, the jury may have believed that the plaintiff, in giving his testimony, did not speak the truth as to the nature and extent of his injuries, and for that reason he likewise did not speak the truth when testifying concerning the question of the defendant's negligence or that of contributory negligence. Finding that the plaintiff had sustained no substantial injury might also have influenced the jury in determining questions as to the speed and movements of the car, and the manner in which it was operated and in which the accident happened. It is not a case of merely redundant or superfluous testimony introduced to support a fact or issue otherwise established by indisputable proof. To the contrary, the testimony so introduced directly tended to refute, and may have completely destroyed, the evidence adduced on behalf of the plaintiff on an issue essential to his cause. That the natural effect of the testimony tended to injuriously affect the plaintiff on a material issue cannot be gainsaid, and I cannot say, nor do I think it shown, that the error committed could not, or did not, affect the result of the trial.

If the written statement made by the plaintiff was erroneously admitted, as I think it was, there ought not to be any question as to its prejudicial effect, for some of the con-

tents of that writing pertained directly to the issues of negligence and contributory negligence and may have influenced the jury in deciding them in favor of the defendant.

Lastly, I cannot agree with the conclusion that, even upon the evidence in the record, a *prima facie* case was not made entitling the plaintiff to go to the jury on the question of the defendant's negligence. In the first place, the written statement signed by the plaintiff and delivered to Dr. Van Cott ought to have been excluded. In the next place, while the plaintiff, in giving his testimony, admitted that the signature to the writing was his signature, yet he also testified that the injury received by him rendered him partly unconscious, and that he was in a dazed and in a semiconscious condition on the evening of the accident, and had no clear recollection of Dr. Van Cott's visit, and because of his mental condition he had no recollection of any writing signed by him or any statements made by him to the doctor on that visit. Whether the jury believed the plaintiff or the doctor, who testified that the plaintiff was conscious and conversed rationally, and that he signed the statement after it was written by the doctor and read to the plaintiff, I do not know. It was within their province to find either way. The question of whether the plaintiff knowingly and understandingly made the statements and signed the writing was in dispute. The evidence bearing thereon was conflicting. Looking at the evidence most favorable to the plaintiff on the issue of defendant's negligence, it, in substance, is shown that the plaintiff boarded the defendant's car. As it was approaching Ninth South, he paid his fare when demanded, and told the conductor that he desired to leave the car at Ninth South. The conductor said, "All right." The car slowed down. The plaintiff arose from his seat and went to the back platform, and stood there a few seconds, and when the car about reached the north side of Ninth South, a place where the car usually stopped coming from the north, and as testified to by him: "Just when they was going slow, I stepped down on the step. I thought they were going to stop. . . . It was pretty near stopped, maybe not quite stopped." While so standing there, the car started up quickly, and, as

testified to by him, he "fell off." While he does not, by the use of any direct language, say such movement of the car threw him off, yet I think such fact may be fairly inferred from all the testimony given by him. True, he also testified that he knew the machinery of the car was controlled by the motorman, and that he did not inform him of his desire to leave the car, and that he did not know whether the conductor pulled the bell cord to stop, but thought he did. I think the triers of fact may find, upon such evidence, that when the plaintiff informed the conductor that he wanted to leave the car at Ninth South, and the conductor replied, "All right," he had done quite enough to apprise the operatives of the car of his intended destination, without also going forward and informing the motorman, or without being able to testify positively that he saw the conductor pull the bell cord. After he informed the conductor that he desired to leave the car at a particular place, and the car slowed down, almost stopping at such place, as testified to by the plaintiff, the triers of fact may say that he had the right to assume that it did so to afford him and others an opportunity to alight therefrom, and that while he was so standing on the step in the presence of the conductor, and in readiness to alight, the speed of the car was quickly increased, and no sufficient opportunity given him to alight, and that he was injured in consequence thereof. I think a sufficient *prima facie* case was made on the question of the defendant's negligence, even upon the evidence found in the record, to let the case go to the jury.

I think the judgment of the court below ought to be reversed, and the case remanded for a new trial.