## COSS v. SPAULDING.

No. 2370.   Decided August 30, 1912 (126 Pac. 468).

1. PHYSICIANS AND SURGEONS—RELATION OF PHYSICIAN AND PATIENT. There was the relation of physician and patient, where defendant called on and examined plaintiff for the purpose of determining the character and extent of his injury, and after the examination prescribed for him, and gave direc-

tions to his mother, who was caring and nursing him, regarding the treatment he should receive at her hands.[1] (Page 452.)

2. PHYSICIANS AND SURGEONS—LIABILITY FOR NEGLIGENT TREATMENT —EMPLOYMENT BY THIRD PERSON. Liability of a physician for negligent or unskillful treatment being founded on tort, not contract, it is immaterial that the physician was employed, not by the patient, or any one authorized to act for him, but by one who had injured him. (Page 452.)

3. PHYSICIANS AND SURGEONS—NEGLIGENT TREATMENT—EVIDENCE. Evidence in an action for negligent treatment *held* to make a question for the jury whether defendant used ordinary care and skill in his diagnosis and treatment of plaintiff's injury. (Page 453.)

APPEAL from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by Leonard Coss, by Minnie Coss, his guardian *ad litem,* against Dr. John M. Spaulding.

Judgment for defendant. Plaintiff appeals.

REVERSED WITH DIRECTIONS FOR NEW TRIAL.

*C. S. Patterson* for appellant.

*Bone & McGee* for respondent.

McCARTY, J.

Plaintiff, a boy twelve years of age, brought this action by his guardian *ad litem* to recover damages from the defendant, a practicing physician, because of defendant's alleged failure to use ordinary care, skill, and diligence in treating an injury to plaintiff's leg, consisting of a fracture of the tibia bone. The allegations of the complaint charging negligence and lack of skill, so far as material here, are as follows:

---

[1] Munz v. Salt Lake City R. Co., 25 Utah, 220, 70 Pac. 852; Madsen v. Utah Light & Ry. Co., 36 Utah, 528, 105 Pac. 799.

"Defendant was called to attend said injury, and careless-ly and negligently failed to discover that the bone in plain-tiff's leg was broken, and carelessly and negligently reported to this plaintiff and to his mother, Minnie Coss, that the bone was not broken, but that the muscles of the leg were simply bruised, and carelessly and negligently failed and neglected to set said broken bone, or to give or prescribe any proper treatment for a broken bone; that about five weeks after the said injury . . . plaintiff learned for the first time that the bone of his leg was broken, that the said bone had partially knit without being properly joined, and that the same will have to be rebroken and properly set; that in the treatment of said fracture the said defendant failed to use ordinary care and skill, and that by the exercise of ordi-nary care and skill the fact that the said bone was broken would have been readily discovered by the said defendant."

The defendant, after denying the allegations of negligence upon which plaintiff relies for a recovery, as a separate de-fense alleged affirmatively:

"That on the 10th day of November, 1911, defendant was employed and paid by one Clarence Purdue to make an ex-amination of plaintiff's leg; that on said 10th day of No-vember, 1911, for the first and only time defendant did make an examination of said plaintiff's leg; that defendant found plaintiff's leg in such a swollen condition that it was impossi-ble by the use of ordinary skill and diligence to discover the nature of plaintiff's injury, and defendant then and there so informed plaintiff and plaintiff's mother and said Purdue, and thereupon defendant's services in respect to plaintiff ceased; that at no time has defendant been in the employ of plaintiff."

The evidence introduced by plaintiff showed that at about 2:30 o'clock on the afternoon of November 9, 1911, he was run over by an automobile and the tibia bone of the right leg broken. The driver of the automobile took plaintiff home, and told his mother that he thought plaintiff's leg was broken, and offered to procure a physician. The mother replied that,

on account of the nervous condition plaintiff was in, she did not want a physician called just at that time. The driver gave plaintiff's mother the telephone number of his employer, a Mr. Purdue, and requested her to call his employer whenever she wanted a physician, and that he would send her one.

Plaintiff's mother was called as a witness and testified in part as follows:

"That evening (referring to the evening of the accident) my husband called up Mr. Purdue, who said he would send his physician. The next morning he brought Dr. Spaulding down, and I stepped up, and he said, 'I am Mr. Purdue, and this is my physician, Dr. Spaulding.' Dr. Spaulding examined the leg, and felt it, and then I asked him if it was broken. He said, 'No.' I said, 'Are you sure?' He said, 'No; it is not broken.' I said, 'No bone trouble there at all?' He said, 'No.' I said, 'I can feel the bones move.' He said, 'No; you can't feel the bones move; if you could feel them, I could.' . . . Then he examined the leg again, and still insisted it was not broken. . . . He gave me a prescription for liniment, and told me to get antiphlogistine and put that on to get the soreness out. He said the leg would be all right in a few days. I got the prescription filled, and used the liniment as directed. He came again December 11th. . . . I said, 'The boy's leg is broken.' He said, 'Oh! no; it isn't broken; the child's leg is all right.'"

On cross-examination she said:

"After the doctor said it was not broken, I thought he was a doctor, and knew what he was talking about, and I thought it was not broken. . . . I thought Dr. Spaulding had the case. I thought Mr. Purdue put him on the case, and, of course, he was the physician on the case, and I didn't consider it necessary for me to say anything about it."

The testimony of the plaintiff regarding what was said and done by the defendant on each occasion when he called to see plaintiff was substantially the same as that given by his (plaintiff's) mother.

Dr. Beer, who is a practicing physician and surgeon, was called as a witness, and testified that he performed an opera-

tion on plaintiff about January 15, 1912; that "the operation was to unite a faulty union of the tibia of the right leg. In making this operation, separating the bones and reuniting them properly, it was necessary to make an incision and expose the bone and the union. The (X-ray) pictures, Exhibits 1 and 2, fairly well represent the condition of the bones as I found them before the operation was performed." The X-ray exhibits referred to were incorporated in and made a part of the bill of exceptions, and they clearly show the character and extent of the fracture. In answer to certain hypothetical questions, containing an enumeration of the facts testified to by the witnesses regarding the extent of the injury and the appearance of plaintiff's leg at the time defendant examined it, and the length of time that had elapsed after the accident before the examination was made, Dr. Beer, said:

"I think a physician, with due care and consideration and attention that he should give to a case of that kind, could easily determine the condition that was present in that case. I can hardly understand, with a boy of his age and physique, how it could be overlooked, if a man had given it proper examination. Notwithstanding the swelling, I think the injury should have been discovered." On cross-examination he said: "If a man would use due diligence in his examination, he should have discovered it."

When plaintiff's evidence in chief was in, and he had rested his case, the defendant moved for a nonsuit, on the ground that plaintiff had "failed to show a case of negligence—to show facts sufficient to go to the jury." The motion was granted. From the judgment rendered on the nonsuit, plaintiff appeals.

Respondent insists (1) that the evidence fails to show that the relation of physician and patient existed between defendant and plaintiff; and (2) that neither negligence nor unskillfulness on the part of defendant in his treatment of plaintiff was shown. Regarding the first proposition, we are clearly of the opinion, from the evidence adduced, that the relation of physician and patient existed. The de-

fendant not only called upon and examined plaintiff for the purpose of determining the character and extent of the injury, but after the examination was completed he prescribed for plaintiff and gave directions to his mother, who was caring for and nursing him, regarding the treatment he should receive at her hands for the injury. The facts in the case, as the record now stands, bring it within the rule announced by this court in the case of *Munz v. S. L. C. R. Co.*, 25 Utah, 220, 70 Pac. 852, and reaffirmed in the case of *Madsen v. Utah L. & Ry. Co.*, 36 Utah, 528, 105 Pac. 799.

It is further contended that plaintiff cannot recover, because neither he nor anyone authorized to act for him employed defendant to perform the services in question. It is conceded, however, that defendant was employed by Mr. Purdue, and that under the contract of employment he, on the occasion referred to, examined and prescribed for plaintiff's injury. The defendant, therefore, was under the same legal obligation to plaintiff to use ordinary care and skill in his examination and treatment of the injury as he would have been under if plaintiff or plaintiff's mother had employed him to perform those services. It is to recover damages for an alleged breach of this legal duty that this action is brought. The action, therefore, is not based on contract, as the argument of counsel for defendant seems to imply, but on tort. Under the great weight of authority, the question of whether plaintiff, his guardian, or some third party employed defendant to perform the services is wholly immaterial. Even though a physician or surgeon renders his services gratuitously, he cannot escape liability for his negligent or unskillful treatment of his patient. In 30 Cyc. 1573, it is said:

"The fact that a physician or surgeon renders his services gratuitously does not absolve him from the duty to use reasonable and ordinary care, skill, and diligence."

In 22 A. & E. Ency. L. 801, the rule is stated as follows:

"The same degree of care and skill, and the same degree of duty, are owed by the practitioner to the patient whom he is treating gratuitously as to the one from whom he receives compensation."

We are of the opinion, and so hold, that the question of whether the defendant used ordinary care and skill in his diagnosis and treatment of the plaintiff's injury should have been submitted to the jury.    **3**

The judgment is reversed, with directions to the trial court to grant a new trial. Costs of this appeal to be taxed against respondent.

FRICK, C. J., and STRAUP, J., concur.